**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 13-326-KD-N |
| | ) |
| BRIAN L. HALL and | ) |
| BRENDA R. HALL, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This action is before the Court on the motion for default judgment, exhibits and memorandum in support filed by the United States. (Docs. 9, 10) Upon consideration and for the reasons set forth herein, the motion is GRANTED.

I. Background

The United States filed its complaint against the defendants Brian L. Hall and Brenda R. Hall. (Doc. 1) In Count One, the United States alleges that Brian Hall owes $4,770,245.43 for unpaid trust fund recovery penalties, plus interest in the amount of $2,813,453.79, for a total of $7,583,699.22,[1] assessed against him as a responsible officer for several corporations. (Doc. 1) The United States alleges that in various taxable quarters during 1999, 2001 and 2002, Brian Hall willfully failed to collect, truthfully account for, and pay over to the Internal Revenue Service (IRS) the payroll taxes withheld from employees that Express Payroll PEO, Inc. and its successors, MesaStaff and Saguaro Services, Inc., leased to customers under employee leasing contracts. The United States alleges that Brian Hall failed

---

[1] At the time of filing the motion for default judgment, this amount had increased to $7,659,664.91 due to the accrual of interest (doc. 9-1).

to remit to the IRS, the employment and income taxes withheld from employees of his corporation Trico Services, Inc. in September 2003 and for employees of Matchtech, Inc., a corporation he acquired in 2007, for various taxable quarters in 2008, 2009, and 2010. The United States alleges that Brian Hall with knowledge that the employment taxes were not paid, used the trust fund taxes to pay personal expenses, pay other corporate expenses, pay corporate vendors, creditors and employees, and to finance other business interests.

In Count Two, the United States alleges that Brenda Hall owes $393,131.41, plus interest in the amount of $19,733.49, for a total of $412,864.90,[2] assessed against her as a responsible officer for Matchtech, Inc. The United States alleges that Brenda Hall willfully failed to collect, truthfully account for, and pay over to the IRS the federal income tax and employment taxes withheld from employees of Matchtech, Inc.

In Count Three, the United States alleges that Brian Hall failed to file his personal income tax return for the years of 2004, 2006, 2007 and 2009. The United States alleges that an assessment for taxes, penalties and interest in the total amount of $11,453.10[3] has been assessed against him.

II. Notice of default to Brian L. Hall and Brenda R. Hall

The Halls were initially served with the summons and complaint on July 27, 2013. (Docs. 1, 5, 6) They filed a motion for extension of time to answer or respond stating that they needed additional time to obtain an attorney. (Doc. 3) The motion was granted. (Doc.

---

[2] At the time of filing the motion for default judgment, this amount had increased to $416,917.93 due to the accrual of interest (doc. 9-1).

[3] At the time of filing the motion for default judgment, this amount had increased to $11,567.25 due to the accrual of interest (doc. 9-1).

4) However, no attorney appeared on behalf of the Halls and they did not file an answer or any other responsive pleading.

The United States then filed an application for entry of default and the certificate of service indicates that a copy of the application was sent to the Halls at their address in Grand Bay, Alabama. (Doc. 7)   The Clerk entered default. (Doc. 8) The docket indicates that a copy of the Clerk's Entry of Default was mailed to the Halls. (Staff notes).  The United States then filed its motion for default judgment, exhibits, and memorandum in support.  (Docs. 9, 10) The certificates of service on the motion and the memorandum indicate that copies were mailed to the Halls at their address in Grand Bay, Alabama. (Doc. 9)  Also, the proposed Default Judgment indicates that a copy was sent to the Halls. (Doc. 9-5)  Thus, the Court finds that the Halls have received sufficient notice of the proceedings against them.

III. Subject matter jurisdiction

This action is brought by the United States to recover unpaid trust fund recovery penalties assessed against Brian and Brenda Hall and for unpaid personal income taxes and penalties assessed against Brian Hall.   Title 28 U.S.C. § 1340 provides that the "district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue . . ."  Also, 28 U.S.C. § 1345 grants original jurisdiction to the district courts "of all civil actions, suits or proceedings commence by the United States . . . " Additionally, 26 U.S.C. § 7402 provides that the district courts shall have jurisdiction over civil actions for the enforcement of the internal revenue laws.  Therefore, the Court has subject matter jurisdiction over this action.

IV. Venue

The United States alleges that venue is proper because the liabilities accrued while Brian and Brenda Hall resided in Mobile County, Alabama. Their motion to extend time to answer indicates that they reside in Grand Bay, Alabama, which is in Mobile County, Alabama. Therefore, venue as alleged is proper in this district court.

V. Personal jurisdiction

The United States alleges that the Halls are residents of Mobile County, Alabama, and the address on their motion to extend time confirms their residence in Mobile County, Alabama. The Halls were served with the summons and complaint by a private process server. (Doc. 5, 6) On the return of service, the process server stated that he left the summons at their residence or their usual place of abode with their daughter, a person of suitable age and discretion who also resides there. (Doc. 5, 6)

Rule 4(e) of the Federal Rules of Civil Procedure provides for serving individuals within a judicial district of the United States. In relevant part, Rule 4(e)(2)(B) states that an individual may be served by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there[.]" Fed. R. Civ. P. 4(e)(2)(B) Also, the Halls' receipt of the summons and complaint is confirmed by their subsequent motion to extend the time to answer or respond to the complaint. (Doc. 3) Additionally, the United States has certified that the Halls are not infants nor incompetents, and that the United States does not possess any information to indicate that they are currently on active military duty. (Doc. 7) Therefore, the Court has personal jurisdiction over the Halls.

VI. Statement of the law

Generally, in the Eleventh Circuit, "there is a strong policy of determining cases on their merits and we therefore view defaults with disfavor." *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir.2003). Thus, "there must be strict compliance with the legal prerequisites establishing the court's power to render" the default judgment. *Varnes v. Local 91, Glass Bottle Blowers Ass'n,* 674 F.2d 1365, 1369 (11th Cir.1982). Overall, the district court "has the authority to enter default judgment for failure to prosecute ... or to comply with its orders or rules of procedure." *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985).

Rule 55 of the Federal Rules of Civil Procedure provides that the Clerk of Court shall enter default if a party fails to plead or otherwise defend an action brought against it. Fed. R. Civ. P. 55(a). If a defendant has been defaulted for failure to appear, plead or otherwise defend, then upon request by the plaintiff, the Clerk shall enter judgment for the amount sought if it is "for a sum certain or for a sum which can by computation be made certain." Fed. R. Civ. P. 55(b)(1). Otherwise, the party entitled to default judgment must apply to the district court. Fed. R. Civ. P. 55(b)(2).

The Court of Appeals for the Eleventh Circuit has held that although "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover, a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact. The defendant, however, is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. Appx. 860, 863 (11th Cir. 2007) (per curiam) (citations and internal quotations omitted). Moreover, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations of the complaint ... actually state a cause of action and that there is a substantive,

5

sufficient basis in the pleadings for the particular relief sought." *Id*. (emphasis omitted); *Nishimatsu Costr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (on motion for default judgment, the Court must determine whether there is a sufficient factual basis in the complaint upon which a judgment may be entered). Therefore, the United States must establish a "prima facie liability case" against the Halls. *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004) (citations omitted).

When assessing default judgment damages, the Court has "an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2007). Overall, a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

Also, the district court may hold a hearing to enter or effectuate a judgment if the court needs to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2). However, a hearing is not necessary because the United States seeks a sum certain that is capable of a mathematical calculation and there is sufficient evidence before the Court in support thereof; specifically, the Declaration of Katherine Young, an Advisor with the Small Business Self-Employed Division of the IRS and the exhibits attached which establish the unpaid trust fund penalties plus interest as of the date of filing the motion for default judgment; and the certified transcripts of the Halls' official IRS records (Docs. 9-1, 9-2, 9-3, 9-4). *Securities and Exchange Commission v. Smyth*, 420 F.3d 1225, 1231-1232 (11th Cir. 2005) ("Judgment of default awarding cash damages could not properly be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation) (internal quotes and citations omitted); *Id*. at n.13 (noting that an

"evidentiary hearing is not a per se requirement; indeed, Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone. . . . We have held that no such hearing is required where all essential evidence is already of record.").

VII. Facts deemed admitted by the default

Upon entry of default, the well-pleaded allegations of the complaint are taken as true. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation . . . is admitted if a responsive pleading is required and the allegation is not denied."); *Tyco Fire & Sec., LLC,* 218 Fed. Appx. at 863 (stating that only the well-plead factual allegations are deemed admitted as true upon default). The Court finds the following facts are well-plead and therefore, deemed admitted by the default.

Trust fund recovery penalties were assessed against Brian Hall as a responsible officer of Express Payroll PEO, Inc., (for the four taxable quarters 3/31/99 - 12/31/99); Saguaro Services, Inc., (for taxable quarters 3/31/01, 6/30/01 and 6/30/02-12/31/02); Trico Services, Inc., (9/30/2003) and Matchtech, Inc., (12/31/08, 3/31/09, 6/30/09 and 6/30/2010). For each of these periods and companies, Brian Hall was a person required to collect, truthfully account for, and/or pay over the federal income and employment taxes withheld from employees. (Doc. 1, at ¶¶ 8 & 19)

For Express Payroll, Brian Hall was a co-owner, president, director, and resident agent. As such, Hall had control over Express Payroll's financial affairs, had the ability to disperse corporate funds, routinely signed corporate checks paying expenses other than the accumulating employment tax liabilities, and controlled the business. (Doc. 1 at ¶¶ 9-10)

After Express Payroll accrued significant payroll tax liabilities in 1999, Brian Hall transferred the employee leasing operations to other corporations he controlled, specifically Mesastaff and later Saguaro Services. (Doc. 1 at ¶ 11)

As a successor entity of Express Payroll and Mesastaff, Saguaro Services employed and leased the same individuals to the same customers as the other two companies. For all taxable periods from 2001 through 2002, Brian Hall was an owner, director, officer, and registered agent of Saguaro Services. As such, Hall controlled its financial affairs, had the ability to disperse corporate funds, routinely signed corporate checks, signed Form 941 (Employer's Quarterly Federal Tax Return) tax returns, otherwise controlled the business, and also signed Saguaro Services' voluntary bankruptcy petition. *See In re Saguaro Services, Inc.*, Bankruptcy No. 02-16512 (Bank. S. D. Ala.). (Doc. 1, at ¶ 13)

During the four tax periods in 1999[4] and the years thereafter, Brian Hall failed to fully pay the payroll taxes withheld from the employees his companies leased to customers under employee leasing arrangements. Instead, Hall used these funds to pay personal expenses, pay other vendors and creditors and finance his other business interests. (Doc. 1 at ¶ 14)

During 2002 and 2003, Brian Hall was Trico's co-owner, vice president, and an officer. Brian Hall controlled Trico's financial affairs, had the ability to disperse corporate funds, routinely signed corporate checks paying expenses other than the accruing tax liabilities and otherwise controlled the business. In this capacity, Hall authorized the payment of thousands of dollars to himself, and failed to authorize, or make, payments to the IRS for the employment and income taxes withheld from its employees. (Doc. 1 at ¶¶ 15-16)

After Trico, Brian Hall became the CEO and a director for Matchtech. Brian Hall controlled Matchtech's financial affairs, directed the disbursement of corporate funds and the payment of its creditors, employees and vendors from the time he acquired the company

---

[4] The United States explains that although more than ten years have lapsed since this assessment, Brian Hall submitted an offer-in-compromise in 2003 that extended the statute of limitations (*See* Doc. 1, ¶ 23, p. 6-7).

through at least mid-2010. He authorized these payments at a time when he knew, or should have known, that Matchtech failed to remit to the IRS employment and income taxes withheld from its employees. (Doc. 1 at ¶¶ 17-18)

During all of the periods referenced above, Brian Hall willfully failed to collect, truthfully account for and/or pay over the federal tax income and employment taxes withheld from the employees of his companies. Instead, at a time when he knew or should have known that those employment taxes were not being paid, He directed his companies to pay other liabilities, including personal expenses.  In addition, Brian Hall failed to exercise his authority to ensure that withheld employment taxes were paid to the United States. (Doc. 1 at ¶20)

Pursuant to 26 U.S.C. §§ 6671 and 6672, for the taxable quarters and in the amounts listed in paragraph 21 of the Complaint, a delegate of the Secretary of the Treasury assessed trust fund recovery penalties against Brian Hall for the unpaid federal income and employment taxes withheld from his companies' employees. (Doc. 1 at ¶ 21); *see also* Forms 4340 certifying to the trust fund recovery penalty assessments against Hall (Doc. 9-2)

Following the assessments, the IRS provided notice and demand for payment of the assessments described in paragraph 21 of the complaint on Brian Hall; however, he has failed to pay the amount owed. As a result, as of June 1, 2013 when the complaint was filed Hall owed the United States for these outstanding trust fund recovery penalties in the amount of $7,583,699.22, plus interest that continued to accrue after that date.  (Doc. 1 at ¶ 22)

Brenda Hall is married to Brian Hall.  For Matchtech, during the periods ending December 31, 2008, March 31 and June 30, 2009, and June 30, 2010, Brenda Hall was (i) the

Vice President of Operations and an Officer, (ii) had the ability to control its financial affairs and disperse corporate funds, (iii) routinely signed corporate checks at a time when she knew or should have known that the employment taxes were not being paid, (iv) signed a Form 941 tax return, and (v) directed the disbursement of corporate funds and the payment of its creditors, employees and vendors. As such, during the periods at issue, Brenda Hall was a person required to collect, truthfully account for, and/or pay over the federal income and employment taxes withheld from Matchtech. (Doc. 1 at ¶¶ 24-26)

Brenda Hall willfully failed to collect, truthfully account for and/or pay over the federal tax income and employment taxes withheld from Matchtech's employees. Brenda Hall signed checks or directed others to sign company checks to pay her personal expenses, fund Brian Hall's business interests, and pay other corporate debts at a time she knew, or should have known, that Matchtech's employment tax liabilities went unpaid. (Doc. 1 at ¶ 27)

Pursuant to 26 U.S.C. §§ 6671 and 6672, for the taxable quarters and in the amounts listed in paragraph 28 of the Complaint, a delegate of the Secretary of the Treasury assessed trust fund recovery penalties against Brenda Hall for the unpaid federal income and employment taxes withheld from Matchtech's employees. (Doc. 1 at ¶ 28); *see also* Forms 4340 certifying to the trust fund recovery penalty assessments against Hall (Doc. 9-4)

Following the assessments, the IRS provided notice and demand for payment of the assessments described in paragraph 28 of the complaint on Brenda Hall; however, she has failed to pay the amount owed. As a result, as of June 1, 2013 when the complaint was filed, Brenda Hall owed the United States for these outstanding trust fund recovery penalties in the amount of $412,864.90, plus statutory interest accruing after that date. (Doc. 1 at ¶ 29)

For the years 2004 and 2006, Brian Hall failed to file his personal income tax returns. The IRS conducted an examination of his liabilities for those years, and calculated the income tax owed. After issuing a notice of deficiency, a delegate of the Secretary of Treasury made assessments for tax, penalties and interest against Brian Hall for the income tax liabilities owed on the dates and in the amounts indicated in paragraph 31 of the Complaint. (Doc. 1 at ¶ 31); *see also* Forms 4340 certifying the assessments (Doc. 9-3)

For tax years 2007 and 2008, on the dates and in the amounts indicated in paragraph 32 of the Complaint, a delegate of the Secretary of the Treasury made assessments against Brian Hall for unpaid federal income taxes, including penalties and interest, gave notice of the assessments, and made demand for payment thereon. (Doc. 1 at ¶ 32); *see also* Forms 4340 certifying to the federal income tax liability assessments. (Doc. 9-3)

Despite the notices of the assessments and the demands for payment, Brian Hall has failed to pay the assessments described in paragraphs 31 and 32 of the complaint. As of June 1, 2013 when the complaint was filed, he owed the United States his outstanding 2004, 2006, 2007 and 2009 federal income taxes in the amount of $11,453.10, plus statutory additions and interest accruing after that date. (Doc. 1 at ¶ 33)

VIII. <u>Analysis</u>

Pursuant to the Internal Revenue Code, employers are required to withhold income taxes and Federal Insurance Contribution Act (FICA) taxes from the employee's wages when those wages are paid. *See* 26 U.S.C. § 3102(a) (The tax imposed by [the Federal Insurance Contributions Act] shall be collected by the employer of the taxpayer, by deducting the amount of the tax from the wages as and when paid."); 26 U.S.C. § 3402(a)(1) ("Except as otherwise provided in this section, every employer making payment of wages shall deduct

and withhold upon such wages a tax determined in accordance with tables or computational procedures prescribed by the Secretary. ") The funds withheld and collected are generally referred to as trust fund taxes and "shall be held to be a special fund in trust for the United States." 26 U.S.C. § 7501. These funds are for the exclusive use of the United States and may not be used to pay the employer's business expense or for any other purpose. *See* 26 U.S.C. §§ 3102(b), 3403 & 7501(a).

A willful failure to collect the trust fund taxes or truthfully account for and pay over the tax results in personal liability on the part of the person responsible for collecting, accounting and paying over the tax to the United States. *Thosteson v. United States*, 331 F.3d 1294, 1299 (11th Cir. 2003) (citing *Williams v. United States*, 931 F.2d 805, 810, *reh'g granted and opinion suppl.*, 939 F.2d 915 (11th Cir. 1991)). Title 26 U.S.C. § 6672(a) provides in relevant part as follows:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a).

The "responsible person" is one who must either collect, account for, or pay over the taxes. *Slodov v. United States*, 436 U.S. 238, 249, 98 S. Ct. 1778, 1786 (1978)(a "responsible person" is one who has a duty to perform at least one of the three functions listed under § 6672). In order to establish liability for the trust fund penalties, the United States must show that there is "(1) a responsible person (2) who has willfully failed to perform a duty . . . to pay over federal employment taxes." *Brown v. United States*, 439 F. App'x 772, 776 (11th

Cir. 2011) (quoting *Thosteson*, 331 F.3d at 1298). Also, a corporation or business may have more than "one responsible person within the meaning of section 6672" and "the courts have interpreted rather broadly who will constitute a 'responsible person'". *Williams*, 931 F. 2d at 810, n.7. "Indicia of responsibility include the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees." *Id.* at 810 (quoting *George v. United States*, 819 F.2d 1008, 1011 (11th Cir.1987)).

### A. Brian Hall and Brenda Hall

The Court finds that the well-pleaded allegations of the complaint which are deemed admitted by the default, state a viable cause of action against the Halls as the responsible persons for the various corporations and form a substantive and sufficient basis in the pleadings to find them liable to the United States for the relief sought; specifically a default judgment for damages for the unpaid trust fund recovery penalties plus interest. *Tyco Fire & Sec., LLC*, 218 Fed. Appx. at 863. Brian Hall and Brenda Hall's corporate positions and duties are set forth herein. *See* Section VII. Based on their overall control of the financial affairs of the corporations, their respective check-signing authority, and their signatures upon certain IRS Form 941 (Employer's Quarterly Federal Tax Return), the Court finds that they were "responsible persons" within the meaning of the statute.

Since the United States has met its burden to establish that the Halls are "responsible persons" under § 6672], the burden shifts to them "to disprove willfulness." *Malloy v. United States*, 17 F.3d 329, 331 (11th Cir. 1994) (citing *Williams*, 931 F. 2d at 809-810). Willfulness, in this context, has been defined as the "voluntary, intentional violation of a known legal duty." *Williams*, 931 F. 2d. at 810 (citing *Cheek v. United States,* 498 U.S. 192, –––, 111 S. Ct.

604, 610 (1991)). In this circuit, the "willfulness requirement is satisfied 'if the responsible person has knowledge of payments to other creditors after [s]he becomes aware of the failure to remit the withheld taxes.'" *Brown v. United States*, 439 Fed.Appx. 772, 776 (11th Cir. 2011) (Citing *Thosteson,* 331 F.3d at 1300). "There is no requirement that willfulness of the responsible person include a fraudulent or other bad motive." *Id.*

The undisputed facts establish that Brian Hall failed to pay to the IRS the federal taxes withheld from the employees of Express Payroll PEO, Inc., (for the four taxable quarters 3/31/99 - 12/31/99); Saguaro Services, Inc., (for taxable quarters 3/31/01, 6/30/01 and 6/30/02-12/31/02); Trico Services, Inc., (9/30/2003) and Matchtech, Inc., (12/31/08, 3/31/09, 6/30/09 and 6/30/2010), which resulted in the assessment of trust fund recovery penalties against him. The undisputed facts also establish that at a time when he controlled the corporations and knew or should have known that those federal employment taxes were not being paid, Hall directed his companies to pay other liabilities, including personal expenses and failed to exercise his authority to ensure that withheld employment taxes were paid to the United States. *See* Section VII. Therefore, the Court finds that Brian Hall has failed to disprove the United States' allegations that he acted willfully.

The undisputed facts establish that Brenda Hall failed to pay to the IRS the federal taxes withheld from the employees of Matchtech. (12/31/08. 3/31/09, 6/30/09 and 6/30/2010), which resulted in the assessment of trust fund recovery penalties against her. The undisputed facts also establish that Brenda Hall signed checks or directed others to sign company checks to pay her personal expenses, fund Brian Hall's business interests, and pay other corporate debts at a time she knew, or should have known, that Matchtech's employment tax liabilities were not paid to the IRS. *See* Section VII. Therefore, the Court

finds that Brenda Hall has failed to disprove the United States' allegations that she acted willfully.

As to damages, Young's Declaration and exhibits, and the Certifications by an IRS officer as to the amounts due to the IRS (docs. 9-1, 9-2, 9-4) provide a sufficient evidentiary basis for an award of damages in favor of the United States. Moreover, there is a presumption that a federal tax assessment issued by the IRS is valid. *United States v. Chila*, 871 F.2d 1015, 1017–18 (11th Cir. 1989) (finding that certified documents presented by the United States in support of the assessment provided the necessary statutory and regulatory information – "identification of the taxpayer, the character of the liability assesses, the taxable period, and the date and amount of the assessment"); *Welch v. Helvering,* 290 U.S. 111, 115 (1933). Accordingly, damages are assessed against Brian Hall in the amount of $7,659,664.91 plus statutory interest accruing thereon and damages are assessed against Brenda Hall in the amount of $416,917.93 plus statutory interest accruing thereon (doc. 9-1, Young's Declaration, p. 2-5, summary of assessed tax liabilities with interest accrued through the date of filing the motion for default judgment) as set forth in the separate Judgment entered contemporaneously herewith.

B. Brian Hall's personal income tax

The Court finds that the well-pleaded allegations of the complaint which are deemed admitted by the default, state a viable cause of action against Brian Hall and form a substantive and sufficient basis in the pleadings to entitle the United States to the relief sought; specifically a default judgment for damages for the unpaid personal income taxes plus penalties and interest. *Tyco Fire & Sec., LLC*, 218 Fed. Appx. at 863. The undisputed evidence establishes that at the time the complaint was filed on June 1, 2013, Brian Hall had

failed to pay his person income taxes for the years 2004, 2006, 2007 and 2009, and owed the United States a total of $11,453.10 for taxes, penalties and interest. (Doc. 9-1, p. 3-4, Young Declaration; doc. 9-3 Forms 4340 certifying the assessments) At the time of filing the motion for default judgment, the total had increased to $11,567.25 (*Id.*). The well-plead factual allegations by the United States that it assessed the unpaid income taxes, penalties and interest, notified Brian Hall of the assessment, and that he failed to pay are deemed admitted as true by his default. Thus he has failed to dispute the validity of the assessment or his liability to the IRS. *See Chila*, 871 F.2d at 1017–18 (presumption of validity of IRS assessments supported by certified documents). Accordingly, damages are assessed against Brian Hall in the amount of $11, 567.25, plus statutory interest accruing thereon.

IX. Conclusion

For the foregoing reasons, the United States' motion for default judgment is GRANTED as set forth herein.

Default judgment shall be entered by separate document in accordance with Rule 58(a) of the Federal Rules of Civil Procedure.

The Clerk is directed to mail a copy of this order to Brian L. Hall and Brenda R. Hall at their address of record.

Done and ordered the 30th day of December 2013.

                                             s/ Kristi K. DuBose
                                             KRISTI K. DuBOSE
                                             UNITED STATES DISTRICT JUDGE